IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **HENRY SIMMONS, JR.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 1:22-00386-KD-N |
| ) | |
| **MOBILE COUNTY BOARD OF SCHOOL** ) | |
| **COMMISSIONERS,** ) | |
| ) | |
| Defendant. ) | |

**ORDER**

This matter is before the Court on Defendant Mobile County Board of School Commissioners' ("Defendant" or the "Board") Motion for Summary Judgment, (Doc. 37), and evidentiary material in support thereof, Plaintiff Henry Simmons, Jr.'s ("Simmons" or "Plaintiff") Response, (Doc. 44), and evidentiary material in support thereof, and the Board's Reply, (Doc. 45). Upon consideration and for the reasons set forth herein, it is **ORDERED** that the Board's Motion for Summary Judgment, (Doc. 37), is **GRANTED**.

**I.      BACKGROUND**

In 2019, Plaintiff Simmons sued his former employer, Washington County Board of Education ("Washington County"), for race discrimination under Title VII. (Doc. 37 at 2; Doc. 44 at 1-2, 10); see Henry Simmons v. Wash. Cnty. Bd. of Educ., No. 1:19-CV-00743-TFM-N (S.D. Ala. 2022). The Board was not a party to this lawsuit. (Doc. 37 at 2; Doc. 44 at 1-2). Simmons and Washington County settled the lawsuit and, consistent with the settlement, Simmons was placed on administrative leave from Washington County and received full pay and benefits up to the date of his retirement. (Doc. 37 at 2; Doc. 44 at 3).

On or about January 12, 2022, four months prior to his retirement from Washington County, Simmons applied for a position with the Mobile County Public School System (the "School System") as a physical education teacher at Scarbrough Middle School. (Doc. 36-2 at 2; Doc. 36-4 at 15, 24). Clintina Pettway, Human Resources Clerk for Mobile County Public Schools, received Simmons' request for hire the next day. (Doc. 36-2 at 2; Doc. 36-6 at 2). Staff at Scarbrough Middle School, including the Principal and Assistant Principal, interviewed Simmons and informed him that they would recommend him for a position there. (Doc. 36-4 at 4); (Doc. 43-1 at 3). A "Request to Hire" from Mobile County Public Schools lists January 24, 2022, as Simmons' "start/hire date." (Doc. 43-6). Simmons submitted a drug test and fingerprints and completed a background check as part of his application process. (Doc. 36-6 at 2).

On January 26, 2022, Simmons met Pettway during a human-resources visit related to his new-hire processing at the School System's Central Office. (Doc. 36-2 at 2; Doc. 36-4 at 5). During that meeting, Simmons worked on onboarding paperwork. (Doc. 36-4 at 7). According to Simmons' deposition, at that point he stopped and told Pettway that he "didn't want Blue Cross/Blue Shield insurance and [he] didn't want [his] retirement taken out at the time." (Id.). Simmons stated that Pettway told him that would not be a problem. (Id. at 8). He also indicated that he made this request because he was advised by his lawyer to do so. (Id.). According to Pettway's affidavit, it was during this meeting that Simmons disclosed that he was on paid administrative leave through the end of the 2021/2022 school year. (Doc. 36-2 at 2).

In an email summary two months later, Pettway wrote to Bryan Hack, Executive Manager of Human Resources for the School System,

> During Mr. Simmons [sic] HR visit, he disclosed he was on Administrative Leave with Washington County until 05/31/22. I was made aware of his administrative leave status when I was going over the Statement of teaching experience form with Mr. Simmons. Mr. Simmons asked that "we DO NOT" contact his previous district. Moreover, he was not

2

> worried about the experience from that district. I then inquired about the number of years he was forfeiting, he then asked me to move in closer and could I keep this between him and I. It was at this moment in our visit Mr. Simmons said that he could not have insurance and participate in RSA.
>
> I then asked Gretchen Lang for assistance because I was told that RSA contributions were mandatory. After reviewing Mr. Simmons [sic] RSA membership status, he was still showing active with Washington County and I made Ms. Nina Hayes[1] aware of his administrative leave status. Ms. Hayes asked me to bring Mr. Simmons into her office. Ms. Hayes then explained that I had brought to her attention that he was on administrative leave and asked him could he prove information on his status. Mr. Simmons said that his lawyer told him to apply for other positions and he had documentation of his settlement with Washington County. Ms. Hayes explained to Mr. Simmons that he could not be paid by two systems at the same time. Mr. Simmons kept stating that his administrative leave was part of his settlement and his lawyer told him he could apply for other positions. Ms. Hayes told Mr. Simmons that once the school term was over, it may be possible for him to reapply for the 2022-2023 school year. Mr. Simmons said "thank you" and I walked him to the front door.
>
> I canceled Mr. Simmons' request to hire and submitted to have his named [sic] removed from the board agenda on Wednesday, January 26, 2022, after his HR visit.

(Doc. 43-2).

Simmons conceded that, during both the meeting with Pettway and the meeting in Hayes' office, he never revealed to Pettway or Hayes why he was on administrative leave with the Washington County School System. (Doc. 36-4 at 17); see also (Doc. 36-2 at 3) (Pettway's affidavit denying that Simmons disclosed the reasons for why he was on paid administrative leave and even that he engaged in litigation with Washington County); (Doc. 36-5 at 5) (Hayes' deposition rejecting that Simmons ever mentioned that he was involved in litigation and may have a confidential settlement incident thereto); (Doc. 43-17 at 2) (Hayes' affidavit denying that Simmons disclosed the reasons for why he was on paid administrative leave and even that he engaged in litigation with Washington County).

Simmons also claimed that in the meeting in Hayes' office, Hayes was "fussing and hollering and screaming." (Doc. 43-3 at 3). Simmons maintained that in reference to his lawsuit against

---

[1] Nina Hayes is Personnel Administrator for the School System. (Doc. 36-5 at 2).

3

Washington County, Hayes told him, "I don't want to go into the Washington County mess." (Id. at 2, 4). Hayes allegedly had no interest in speaking to Simmons' attorney and indicated that she had already talked to Bryan Hack and "somebody else she named out." (Id. at 4). Simmons averred in his declaration that "Washington County mess" referred to Simmons' prior lawsuit against Washington County. (Doc. 43-1 at 4).

It was during this meeting in Hayes' office that she informed Simmons that the School System would not move forward with the request to hire "due to the fact that he was employed in another system" [in Alabama]. (Doc. 36-5 at 3-4); see also (Doc. 43-12) (email from Hayes to Claudia Baker dated January 27 in which Hayes wrote, "During the meeting, Simmons was informed that due to his employment in Washington County, Mobile County would not move forward with the request to hire."). Following the meeting in Hayes' office, Hayes told Pettway that because of Simmons' simultaneous employment with another school district in the state, "we would need to cancel the request to hire." (Doc. 36-5 at 7). Indeed, Pettway initially went to Hayes during Simmons' January 26 visit to address Simmons' "double dipping" concern. (Id. at 8).

An email from Bryan Hack to Lakesha Brackins[2] that same morning reads,

> Here is a crazy situation. Scarbrough recommended Simmons who is apparently the brother of Dr. Ferrell. DH has been interested (per the pa) in his hire as well. He went to the board Monday, passed background, etc. He came in today for his HR visit and advised that he doesn't want insurance, benefits or anything because he is still employed at Washington County as a teacher, albeit on administrative leave with pay. He didn't say for what, but we are investigating. He is trying to double dip. I instructed the PA to reach out to Washington County to find out anything she could. I asked her to tell him he can't start for us while employed there and to give us a resignation.
>
> Just because he is on admin. leave doesn't mean that he can't be hired, but we need more info. of course.
>
> Just keeping you posted.

---

[2] Lakesha Brackins is Deputy Superintendent of Academics at Mobile County Public Schools. (Doc. 36-7).

(Doc. 36-7 at 2). Hack testified in his deposition that the Retirement System of Alabama has a specific rule that prevents getting paid by two of their entitles at the same time. (Doc. 36-3 at 3). He explained that in an attempt to investigate the reasons behind Simmons' administrative leave status, he called over to Washington County Public Schools and asked that their human resources director call him back. (Id. at 4). He testified, "[W]hat we thought was going on was that Mr. Simmons was facing disciplinary administrative leave and facing termination. The termination letter should be in the personnel file. That's what we were trying to get and find out what's going on." (Id. at 7-8). Despite calling twice, Washington County officials never returned his calls. (Id. at 8). Per Hack's affidavit, "Almost all of the teachers that have been placed on administrative leave during [his] time as the Executive Manager of Human Resources were placed on administrative leave pending investigations into allegations of violations of Board policy, Board procedures, Ethical Violations, committing crimes, allegations of abuse and other types of misconduct." (Doc. 36-1 at 2). He was unaware of a teacher being placed on administrative leave because of their engagement in "protected conduct." (Id.).

On March 28, 2022, the U.S. Equal Employment Opportunity Commission Mobile Local Office ("EEOC") sent to Hack a Notice of Charge of Discrimination ("Notice") that Simmons had filed against the Board under Title VII of the Civil Rights Act of 1964 ("Title VII"). (Doc. 18-1). That same day, in response to an email from Hack requesting "whatever [she] has" on Simmons, Hayes wrote,

> Simmons is the applicant who is on administrative leave from Washington County. In [sic] informed Tina during the hiring process that he did not want insurance or retirement taken out of his check because it was being taken out in Washington County. That is when he informed Tina that he was on administrative leave. After speaking with you concerning the matter, the offer was withdrawn.

(Doc. 43-16).³ A March 30 email from Hayes requested that Simmons be placed in the "Do Not Hire, Do Not Substitute" module for "good and just causes." (Doc. 43-15 at 1). Pettway then sent in response that Simmons was placed in the "Do Not Hire" module and that his applicant status was changed to "Not Eligible for Work." (Id.). In her affidavit from the same day, Hayes referenced Simmons' job application where Simmons declared that he had never "been placed on leave by an employer or left such employment prior to the end of the employment term." (Doc. 43-17 at 1); (see also Doc. 43-5 at 3) (listing "No" in response to "Have you ever . . . been placed on leave by an employer or left such employment prior to the end of the employment term?").

On September 28, 2022, Simmons brought this lawsuit against the Board. (Doc. 1). On October 13, 2023, Simmons received from the EEOC his Notice of Right to Sue Within 90 Days. (Doc. 31-1). On October 20, 2023, this Court granted Simmons leave to file a First Amended Complaint which does not contain any claims based upon his placement on the do-not-hire list. (Doc. 32 at 5). In Count I of the First Amended Complaint, Simmons alleges retaliatory recission of an employment offer in violation of 42 U.S.C. § 1981, made actionable against the Defendant by 42 U.S.C. § 1983. (Doc. 35 at 7). Count II asserts the same factual predicate but under Title VII. (Id. at 7-8). Simmons prays for the following as relief: declaratory judgments that Defendant has violated the anti-discrimination/retaliation provisions of Section 1981 and Title VII by rescinding an offer of employment; a court order that Plaintiff be hired to a comparable position with full back pay and benefits; $500,000 in compensatory damages; and costs and expenses in bringing the action, including attorney's fees. (Id. at 8).

---

³ The Pettway-Hack email summary cited above, (Doc. 43-2), was also in response to Hack's email requesting information on Simmons.

## II. LEGAL STANDARD

District courts shall grant summary judgment when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant always bears the initial responsibility of informing the district court of the basis for its motion and identifying the parts of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c). The non-moving party generally must use these same categories of evidence to support the inference that a material fact is genuinely disputed. Fed. R. Civ. P. 56(c). The substantive law identifies which facts are material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (11th Cir. 1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id.; see also Cunningham v. AutoZoners, LLC, No. 12-CV-00538-KD-B, 2013 WL 6008566, at *6 (Nov. 13, 2013) ("However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment.").

"[T]o survive summary judgment [on a discriminatory retaliation claim], the employee must present a story, supported by evidence, that would allow a reasonable jury to find the employer engaged in unlawful retaliation against the employee." Berry v. Crestwood Healthcare, LP, 84 F.4th 1300, 1311 (11th Cir. 2023). The court must view the evidence in the light most favorable to the employee and draw all reasonable inferences in his favor. Id. "But inferences in favor of a plaintiff can be based only on evidence – not on speculation." Martin v. Fin. Asset Mgmt. Sys.,

Inc., 959 F.3d 1048, 1058 (11th Cir. 2020). Moreover, the employer will be entitled to summary judgment if the employee "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex, 477 U.S. at 323.

### III. SUBSTANTIVE LAW

Under Title VII, it is an unlawful employment practice for an employer to discriminate against an employee or applicant for employment[4] "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). This is known as Title VII's antiretaliation provision. See, e.g., Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 56 (2006). Section 1981 also encompasses retaliation claims. CBOCS W., Inc. v. Humphries, 553 U.S. 442, 451-52 (2008); see 42 U.S.C. § 1981(a). Section 1981 is a civil rights statute adopted just after the Civil War that provides, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." § 1981(a). Both Title VII and Section 1981 require the same proof and employ the McDonnell Douglas burden-shifting framework. Standard v. A.B.E.L Servs., 161 F.3d 1318, 1330 (11th Cir. 1998), abrogated on other grounds by Burlington N., 548 U.S. 53. Accordingly, Plaintiff's Title VII and Section 1981 retaliation claims are analyzed together.

The McDonnell Douglas framework has three steps. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 804 (1973). The framework is used in the absence of direct evidence of employment discrimination. Standard, 161 F.3d at 1333. First, the employee must establish a

---

[4] It is undisputed that Simmons was an applicant for employment at Defendant's Scarbrough Middle School. However, because the bulk of the case law refers to employees, the Court often does so too, noting that both employees and applicants for employment are cognizable plaintiffs under Title VII.

prima facie case of employment discrimination. McDonnell Douglas, 411 U.S. at 802. He does so in the retaliation context by showing: (1) he engaged in statutorily protected conduct; (2) he suffered an adverse employment action; and (3) a causal relation exists between the two events. Tolar v. Bradley Arant Boult Commings, LLP, 997 F.3d 1280, 1289 (11th Cir. 2021). Next, provided that that the employee establishes his prima facie case, the burden shifts to the employer to give a "legitimate, nonretaliatory reason" for the adverse action. Id. Then, if the employer does so, the burden shifts back to the employee to establish that the reason offered by the employer was a pretext for retaliation. Id.

An employee engages in "statutorily protected conduct" when he can show that he believed in good faith that his employer engaged in unlawful employment practices and that his belief was objectively reasonable in light of the facts and record presented. Anduze v. Fla. Atl. Univ., 151 F. App'x 875, 878 (11th Cir. 2005) (applying the standard for protected activity in a Title VII case); Bryant v. U.S. Steel Corp., 428 F. App'x 895, 898 (11th Cir. 2011) (applying the same standard in a Section 1981 case). "By its plain language, Title VII does not require retaliation to be based on protected activity engaged in against the defendant employer." Bailey v. Metro Ambulance Servs., Inc., 992 F.3d 1265, 1278 (11th Cir. 2021).

An "adverse employment action" is an ultimate employment decision that includes the failure to hire and recission of an employment offer. See, e.g., Van Voorhis v. Hillsborough Cnty. Bd. of Cnty. Comm'rs, 512 F.3d 1296, 1300 (11th Cir. 2008) ("An adverse employment action is an ultimate employment decision, such as discharge or failure to hire . . . ."); Holley v. Ga. Dep't of Corrs., 845 F. App'x 886 (11th Cir. 2021) (assuming without expressly holding that rescinding a job offer is an adverse employment action).

9

Crucially, the Supreme Court has held that a plaintiff asserting a Title VII retaliation claim must demonstrate that his participation in the statutorily protected conduct was the "but-for" cause of the adverse employment action. Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013). This is unlike the lessened causation standard for discrimination claims based on a protected status under Title VII, which merely requires that the employee show that his protected status was a motivating factor in the adverse employment action. Id. Separately, plaintiffs pursuing any type of Section 1981 claim must prove but-for causation. Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 140 S. Ct. 1009 (2020). Thus, the standard for Simmons' retaliation claims under Title VII and Section 1981 is but-for causation. "Where but-for causation is required, a plaintiff with evidence of only a tagalong 'forbidden consideration' cannot meet her summary judgment burden because she cannot show that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Yelling v. St. Vincent's Health Sys., 82 F.4th 1329, 1340 (11th Cir. 2023).

To establish a causal connection in a retaliation claim, a plaintiff need only demonstrate "that the protected activity and the adverse action were not wholly unrelated." Shotz v. City of Plantation, 344 F.3d 1161, 1180 n.30 (11th Cir. 2003) (emphasis omitted). However, the plaintiff must generally establish at a minimum that the defendant was actually aware of the protected conduct at the time the defendant took the adverse employment action. Raney v. Vinson Guard Serv., Inc., 120 F.3d 1192, 1197 (11th Cir. 1997); see also Adams v. City of Montgomery, Nos. 2:11-CV-1122-WKW, 2:12-CV-523-WKW, 2013 WL 5441857, at *13 (M.D. Ala. Sep. 27, 2023) ("An employee cannot establish retaliation without proving that the employer knew that the employee engaged in protected activity. Without knowledge, there can be no retaliatory intent, and thus there can be no causal connection.") (emphasis included) (citing 1 Barbara T.

Lindemann et al., Employment Discrimination Law 15-50-15-51) (5th ed. 2012). "And while we have held that awareness of protected expression may be established based on circumstantial evidence,[5] our cases have required plaintiffs to show a defendant's awareness with more evidence that mere curious timing coupled with speculative theories." Raney, 120 F.3d at 1197. In addition, summary judgment cannot be avoided "based on hunches unsupported with significant probative evidence." Id. at 1198. "Discrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent." Silvera v. Orange Cnty. Sch. Bd., 244 F.3d 1253, 1262 (11th Cir. 2001). It is therefore the Court's duty to focus on the actual knowledge and actions of the decision-maker. Walker v. Prudential Prop. and Cas. Ins. Co., 286 F.3d 1270, 1274 (11th Cir. 2002). And it is the plaintiff's burden in alleging retaliation to set forth significant probative evidence regarding the identity, authority, and knowledge of the employer's agent who is allegedly responsible for the adverse employment action. Raney, 120 F.3d at 1197. By failing to do so, no genuine issue of material fact exists for trial. Id. at 1198-99.

Once the employee makes out his prima facie case of retaliation, the burden shifts to the employer to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action. Johnson v. Booker T. Wash. Broad. Serv., Inc., 234 F.3d 501, 507 n.6 (11th Cir. 2000). The defendant's proffered explanation must be legally sufficient to justify a judgment for the defendant. Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 255 (1981).

If the defendant carries its burden of production, the presumption raised by the prima facie case disappears and the burden shifts back to the employee to establish that the reason offered by the employer was a pretext for retaliation. Burdine, 450 U.S. at 255-56 ("The plaintiff retains the burden of persuasion. [He] now must have the opportunity to demonstrate that the

---

[5] Indeed, the McDonnell Douglas burden-shifting framework presupposes the plaintiff's reliance on circumstantial evidence of retaliation. See, e.g., Lee v. Russell Cnty. Bd. of Educ., 684 F.2d 769, 773-74 (11th Cir. 1982).

11

proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that [he] has been the victim of intentional discrimination."). To prove that the employer's explanation is pretextual, the employee must "cast enough doubt on its veracity that a reasonable factfinder could find it unworthy of credence." Berry, 84 F.4th at 1307. Provided that the proffered reason is one that might motivate a reasonable employer, the employee "must meet that reason head on and rebut it." Gogel v. Kia Motors Mfg. of Ga., Inc., 967 F.3d 1121, 1136 (11th Cir. 2020). To establish pretext at the summary judgment stage, a plaintiff must point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's stated reason. Id. (citing Jackson v. Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005). "A reason is not pretext for retaliation unless it is shown both that the reason was false, and that retaliation was the real reason." Gogel, 967 F.3d at 1136 (alteration adopted with emphasis included). Ultimately, to avoid a summary judgment the employee must establish a genuine dispute of material fact that the employer's reason is pretextual. Berry, 84 F.4th at 1308.

      The McDonnell Douglas framework is not the only method for a plaintiff to successfully rely on circumstantial evidence in an employment discrimination suit. See Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011) ("[E]stablishing the elements of the McDonnell Douglas framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case."); Russell Cnty. Bd. of Educ., 684 F.2d at 773 ("The McDonnell Douglas framework is only one means of proving a case of discrimination, however. It is not the exclusive means."). Without relying on McDonnell Douglas, an employee may prove retaliation with any circumstantial evidence that creates a reasonable inference of retaliatory intent. Berry, 84 F.4th at 1310. Some

prior Eleventh Circuit precedents refer to this approach as the "convincing-mosaic framework." Id. That said, the Eleventh Circuit has used the phrase "simply to recognize that courts must consider the totality of a plaintiff's circumstantial evidence on summary judgment." Yelling, 82 F.4th at 1342. "But a 'convincing mosaic' is a metaphor, not a legal test and not a framework . . . The legal standard – and the question for the court at summary judgment – is only whether the evidence permits a reasonable factfinder to find that the employer retaliated against the employee." Berry, 84 F.4th at 1301. That is the standard no matter how the employee presents his circumstantial evidence. Id.

The Eleventh Circuit has previously identified three nonexclusive categories of circumstantial evidence that can reasonably raise an inference of discriminatory conduct. Id. They are evidence of (1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred; (2) systematically better treatment of similarly situated employees; and (3) pretext. Jenkins v. Nell, 26 F.4th 1243, 1250 (11th Cir. 2022). No matter whether the evidence fits within one of these neat buckets, summary judgment will be improper if and only if the evidence raises a reasonable inference that the employer retaliated against the employee. Berry, 84 F.4th at 1311.

**IV.     ANALYSIS**

For purposes of this Order, the Court assumes that Simmons "engaged in statutorily protected conduct" when he sued Washington County for race discrimination and "suffered an adverse employment action" when officials at the School System decided not to move forward with Simmons' request to hire. As such, Simmons satisfies the first and second elements of his prima facie case for employment discrimination in the retaliation context. See Tolar, 997 F.3d at 1289. Nonetheless, the Court concludes that the Board is entitled to summary judgment because

13

Simmons fails to provide sufficient evidence from which a reasonable jury could find that his protected conduct caused the Board's recission of his employment offer at Scarbrough Middle School.

Simmons fails to sustain his burden on summary judgment because nothing in the record supports a sufficient causal relation between Simmons' suit against Washington County and the Board's subsequent recission of his employment offer at Scarbrough Middle School. Simmons' deposition, (Doc. 36-4 at 17), Pettway's affidavit, (Doc. 36-2 at 3), and Hayes' deposition, (Doc. 36-5 at 5), and affidavit, (Doc. 43-17 at 2), all indicate that Simmons at no point revealed to Pettway or Hayes why he was on administrative leave with the Washington County School System. In addition, Hack stated in his affidavit that he was unaware of a teacher being placed on administrative leave because of his engagement in protected conduct. (Doc. 36-1 at 1).

Simmons tries to use Pettway's March 28 email to Hack for the proposition that the Board was aware that Simmons had engaged in protected activity. (See Doc. 44 at 10). In pertinent part, the email reads,

> During Mr. Simmons [sic] HR visit, he disclosed he was on Administrative Leave with Washington County until 05/31/22. <u>I was made aware of his administrative leave status when I was going over the Statement of teaching experience form with Mr. Simmons</u>. Mr. Simmons asked that "we DO NOT" contact his previous district. Moreover, he was not worried about the experience from that district. I then inquired about the number of years he was forfeiting, he then asked me to move in closer and could I keep this between him and I. It was at this moment in our visit Mr. Simmons said that he could not have insurance and participate in RSA.
>
> I then asked Gretchen Lang for assistance because I was told that RSA contributions were mandatory. After reviewing Mr. Simmons [sic] RSA membership status, he was still showing active with Washington County and I made Ms. Nina Hayes aware of his administrative leave status. Ms. Hayes asked me to bring Mr. Simmons into her office. <u>Ms. Hayes then explained that I had brought to her attention that he was on administrative leave and asked him could he prove information on his status</u>. Mr. Simmons said that his lawyer told him to apply for other positions and he <u>had documentation of his settlement with Washington County</u>. <u>Ms. Hayes explained to Mr. Simmons that he could not be paid by two systems at the same time</u> . . . .

14

(Doc. 43-2) (emphasis added). But knowledge of Simmons' settlement with Washington County is not the same thing as knowledge of Simmons' settlement with Washington County <u>incident to a suit for race discrimination</u>. A reasonable inference cannot be made that the mention of a settlement would lead an employer to know that Simmons had engaged in protected conducted to obtain that settlement. Rather, the evidence indicates that Hack, who instructed Hayes to withdraw Simmons' offer,[6] reasonably suspected that Simmons was on disciplinary administrative leave. (Doc. 36-3 at 7); (<u>see also</u> Doc. 36-1 at 2) ("Almost all of the teachers that have been placed on administrative leave during my time as the Executive Manager of Human Resources were placed on administrative leave pending investigations into allegation of violations of Board policy, Board procedures, Ethical Violations, committing crimes, allegations of abuse and other types of misconduct."). Hack seemingly reached out to Washington County officials to corroborate these suspicions. (Doc. 36-3 at 7-8) ("The termination letter should be in the personnel file. That's what we were trying to get and find out what's going on."). And despite calling twice, Hack's calls were never returned. (<u>Id.</u> at 8). There is simply no evidence that Hack knew why Simmons was on administrative leave or received a settlement.

At a minimum, to satisfy the "causal link" prong of his prima facie retaliation case, Simmons must establish that the Board (through its employees) was actually aware of Simmons' discrimination suit against Washington County at the time his job offer was rescinded. <u>See</u> <u>Raney</u>, 120 F.3d at 1197. Simmons falls short of carrying his burden to produce significant probative evidence regarding Hack's, Hayes', Pettway's, or any other relevant employee's knowledge of this statutorily protected conduct. <u>See id</u>. "Without knowledge, there can be no

---

[6] (Doc. 36-3 at 2) (Hack's deposition where he acknowledges himself as the "chief HR official" at the School System); (Doc. 43-16) (Hayes' March 28 email to Hack in which she wrote, "After speaking with you concerning the matter, the offer was withdrawn.").

15

retaliatory intent, and thus there can be no causal connection." Adams, 2013 WL 5441857, at *13 (citing Lindemann et al., Employment Discrimination Law 15-50-15-51).

Per Simmons' deposition, "I told [Hayes] – well, she just contact [sic] my attorney and my attorney would explain to her everything. She told me she didn't want to talk to my attorney. She wasn't getting involved in the mess of Washington County. And she had already talked to Bryan Hack and somebody else she named out." (Doc. 43-3 at 4). Simmons speculated in his declaration that "Washington County mess" referred to Simmons' prior lawsuit against Washington County. (Doc. 43-1 at 4). However, Eleventh Circuit precedent prevents this Court from allowing Simmons to prove the Board's awareness of Simmons' Washington County suit based on "mere curious timing coupled with speculative theories." Raney, 120 F.3d at 1197; see also Silvera, 244 F.3d at 1262 ("Discrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent."). Simmons cannot avoid summary judgment "based on hunches unsupported with significant probative evidence." Raney, 120 F.3d at 1198.

In reviewing whether the non-moving party has met its burden on summary judgment, this Court must "stop short of weighing the evidence and making credibility determinations of the truth of the matter." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 999 (11th Cir. 1992). That said, a dispute of fact is only genuine for the purpose of prohibiting summary judgment if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 807 (11th Cir. 2010). In any event, the Court concludes that Simmons has not provided sufficient evidence that his protected suit against Washington County was the "but-for" cause of the Board's recission of his job offer at Scarbrough Middle School. See Nassar, 570 U.S. 338 (holding that that Title VII retaliation claims must be proved according to traditional principles of but-for causation); Comcast Corp.,

16

140 S. Ct. at 1019 ("To prevail, [Section 1981 plaintiffs] must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right.").

Moreover, even if Simmons could make out a prima facie case, he does not establish that the Board's stated reason for withdrawing the offer – that officials were concerned that Simmons was "double dipping" – was a pretext for retaliation. Once the employee makes out his prima facie case of retaliation, the burden shifts to the employer to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action. Johnson, 234 F.3d at 507 n.6. The defendant's proffered explanation must be legally sufficient to justify a judgment for the defendant. Burdine, 450 U.S. at 255. Here, the Board proffers two reasons. "The decision not to recommend Simmons be hired at that time was initially made on the basis of his being employed by another school system, an additional reason was that his application contained false statements.[7]" (Doc. 37 at 9).

The School System officials' concern that Simmons was trying to "double dip" is legally sufficient to justify a judgment for the Board. The Teachers' Retirement System of Alabama's ("TRS") Agency Manual lists "persons in receipt of a retirement benefit from the TRS" as ineligible for participation in the TRS. Tchrs.' Ret. Sys. of Ala., Agency Manual at 2 (2022). It also states that participation in the TRS is "mandatory if a person is employed in a position eligible for coverage in a non-temporary capacity on at least a one-half time basis earning at least the federal minimum wage." Id. at 1.

Simmons cherry-picks Hack's January 26 email in an attempt to establish that the Board's reason was a pretext for retaliation. (See Doc. 44 at 12 (citing Doc. 36-7 at 2) ("Just because he

---

[7] The fact that Hayes' email requesting that Simmons be placed in the "Do Not Hire, Do Not Substitute" module for "good and just causes," (Doc. 43-15 at 1), was sent on the same day as Hayes' affidavit suggests that his placement in the module followed officials' recognition that Simmons had submitted a job application containing false statements, not as retaliation for Simmons filing a charge with the EEOC.

17

is on admin. leave doesn't mean he can't be hired, but we need more info. of course.")). But Simmons overlooks Hack's statement two sentences earlier, "He is trying to double dip." (Doc. 36-7 at 2). As discussed, the record unambiguously reflects that concerns over Simmons' administrative leave <u>with full pay and benefits</u> status with Washington County caused the Board to rescind his offer. (Doc. 36-5 at 3-4) ("At that point [Hayes] informed Mr. Simmons that then [the School System] could not move forward with the request to hire due to the fact that he was employed in another system."); (Doc. 43-12) (email from Hayes to Claudia Baker dated January 27, 2022, in which Hayes wrote, "During the meeting, Simmons was informed that due to his employment in Washington County, Mobile County would not move forward with the request to hire."); (Doc. 36-3 at 3) ("The RSA, which is the Retirement System of Alabama, has a specific rule that you can't get paid by two RSA entities at the same time."); (Doc. 36-7 at 2) ("He is trying to double dip."). No finder of fact could reasonably conclude otherwise. <u>See Reeves</u>, 594 F.3d at 807.

Accordingly, once the Board carried its burden of production by proffering a legitimate, nonretaliatory reason, Simmons did not cast enough doubt on the Board's reason such that a reasonable factfinder would find it unworthy of credence. <u>See Berry</u>, 84 F.4th at 1307. Simmons' attempts to point to "weakness, implausibilities, inconsistencies, incoherencies, or contradictions" in the Board's explanation fall flat. <u>Gogel</u>, 967 F.3d at 1136. "A reason is not pretext for retaliation unless it is shown <u>both</u> that the reason was false, <u>and</u> that retaliation was the real reason." <u>Id.</u> Simmons' sophistry cannot overcome the record's indication that the Board did not rescind his offer for retaliatory reasons.

Finally, Simmons is no more successful under what has been called the "convincing-mosaic framework." Simmons argues that "the facts of this matter present a convincing mosaic

of evidence that the defendant retaliated against Simmons because of his prior protected activity." (Doc. 44 at 16.) An employee may prove retaliation with any circumstantial evidence that creates a reasonable inference of retaliatory intent. Berry, 84 F.4th at 1310. "But a 'convincing mosaic' is a metaphor, not a legal test and not a framework . . . The legal standard – and the question for the court at summary judgment – is only whether the evidence permits a reasonable factfinder to find that the employer retaliated against the employee." Id. at 1301. Simmons contends that inconsistencies between Hayes', (Doc. 43-17), and Pettway's, (Doc. 36-2), affidavits and Pettway's March 28, 2022, email summary, (Doc. 43-2), "buttress the mosaic of evidence establishing a question of fact whether Defendant unlawfully retaliated against Simmons." (Doc. 44 at 20). They do not. The affidavits do go so far as to deny that Simmons ever advised that he was engaged in litigation with Washington County, while Pettway's email explicitly acknowledges Simmons' settlement with Washington County. Still, as explained above, knowledge of Simmons' settlement with Washington County is not the same thing as knowledge of Simmons' settlement with Washington County incident to a suit for race discrimination. At bottom, Simmons fails to present sufficient evidence that the Board knew of his prior lawsuit for race discrimination and the record reveals that the Board rescinded Simmons' employment offer due to concerns over his administrative leave with full pay and benefits status with Washington County. Because the record does not raise a reasonable inference that the Board retaliated against Simmons, his charges of retaliation under Section 1981 and Title VII cannot succeed.

V.      **CONCLUSION**

For the reasons set forth herein, the Board's Motion for Summary Judgment, (Doc. 37), is **GRANTED**. Judgment shall be entered by separate document as provided in Federal Rule of Civil Procedure 58(a).

      **DONE** and **ORDERED** this the 18th day of **December 2023.**

      /s/ Kristi K. DuBose
      **KRISTI K. DuBOSE**
      **UNITED STATES DISTRICT JUDGE**